**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DOMINIC SABBIA, SR.,** )<br>)<br>        Plaintiff, )<br>)<br>    v. )<br>) No. 09 C 3768<br>**COMMISSIONER OF THE SOCIAL SECURITY** )<br>**ADMINISTRATION, et al.,** )<br>)<br>        Defendants. )<br>) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dominic Sabbia ("Sabbia") filed this suit pro se against the Commissioner ("the Commissioner") of the Social Security Administration ("SSA"), seeking review of the Commissioner's partial denial of his application for disability benefits under the Social Security Act, 42 U.S.C. § 405(g). Currently before me are the parties' cross-motions for summary judgment. For the reasons explained below, I grant the Commissioner's motion for summary judgment and I deny Sabbia's motion. I also deny the many additional motions that Sabbia has filed in conjunction with his summary judgment motion.

**I.**

Sabbia filed a first application for Disability Insurance Benefits ("DIB") on December 15, 2001, alleging a disability onset date of November 2, 2001 ("the 2001 application"). The application

was initially denied in 2002 for failure to submit evidence.[1]  No further action was taken on the application because, so the SSA maintained at the time, Sabbia had never sought reconsideration of the decision.  (The SSA has recently changed its position on this issue, a development that I discuss more fully below).

In 2005, Sabbia filed a series of additional applications for benefits ("the 2005 application").  The first of these was submitted on April 29, 2005, and alleged a disability onset date of March 3, 2003.  R. at 1006.  This application was subsequently consolidated with his later applications and eventually denied, both in the first instance and on reconsideration.  On March 17, 2006,[2] Sabbia applied to have the Commissioner's determination

---

[1] Sabbia disputes the SSA's claim that his application was denied for failure to submit evidence.  He also insinuates that in making this claim, the SSA intends to deceive the court.  *See, e.g.*, Pl.'s Resp. at 4 ("SSA is counting on the District court NOT to read the pages of the record refered [sic] to in SSA's memorandum.  (Tr. 514) does NOT say denied for failure to submit evidence.").  Sabbia is correct in pointing out that page 514 of the record, which the SSA cites in support of its claim, does not show that his 2001 application was denied for failure to submit evidence.  However, the SSA's position is supported by evidence elsewhere in the record.  *See* R. at 890 ("Additional evidence was needed to evaluate your condition(s), so a consultative examination(s) was arranged for you. However, you failed to attend the examination(s) that we arranged and did not contact this office to explain why.  The evidence we now have does not show that your condition is disabling. We based our determination on this evidence because you did not take the medical examination we asked you to have at our expense. The examination was needed to fully evaluate your condition.").  The citation to the wrong page number appears to have been inadvertent.

[2] During the course of these proceedings, Sabbia also filed a lawsuit in this District.  *See Sabbia v. Social Security*

reviewed by an ALJ. After examining the record, the ALJ issued a decision on November 1, 2006, concluding that Sabbia was disabled and suffered from "chronic back pain secondary to lumbar disc disease, asthma, anxiety and depression." R. at 22. However, given the records of Sabbia's earnings during the years in question, the ALJ determined that Sabbia was entitled to benefits only as of February 15, 2005 -- not, as Sabbia had claimed in his April 2005 application, March 2003.

Sabbia sought review of the ALJ's determination by the Appeals Council. On April 9, 2009, the Appeals Council denied Sabbia's request, R. at 4-8, and on May 11, 2009, he filed the present action seeking review of the Commissioner's decision denying him benefits for the period between March 2003 and February 2005.

In his motion for summary judgment, Sabbia cites evidence that was not presented in the proceedings below and argues that the case should be remanded to the Commissioner with an order to award him benefits. In the alternative, he contends that the case should be remanded so that the ALJ can consider the evidence in question in the first instance. In addition, Sabbia seeks review not only of the ALJ's decision regarding his 2005 application, but also the

_Administration et al._, 05 C 07161 (N.D. Ill. filed Jan. 3, 2006). On March 10, 2006, the case was dismissed for failure to exhaust administrative remedies. _See Sabbia v. Social Security Administration et al._, 05 C 07161 (N.D. Ill. Mar. 10, 2006) (minute order) (doc. 19).

denial of his 2001 application. Further, Sabbia has filed a number of other motions, including a motion seeking to bar the Commissioner's motion for summary judgment, a motion seeking excess damages, and a motion requesting that the Commissioner be held in contempt.[3] For his part, the Commissioner argues that I should disregard Sabbia's additional evidence and should affirm the ALJ's judgment. The Commissioner also argues that Catherine Corr

---

[3] Even beyond seeking review of his 2001 and his 2005 applications for benefits, Sabbia purports to assert an ever-growing list of additional causes of action, including: "Mail Fraud; Tax Fraud; Racketeering; Confidence Game; Rico act; The Crime Victims' Rights act of 2004, 18 U.S.C. § 3771; Federal Tort Claims Act; Americans with Disabilities Act; Rehabilitation Act; Employee Retirement Income Security Act; IRS section 736; Social Security Act of 1935; Medicare Act of 1965." Pl.'s Reply at 5. He also asserts violations of his rights under the "first, fifth, seventh, [and] fourteenth amendments and the contracts clause of the United States Constitution," *id.* at 4, and he asserts that the SSA has discriminated against both him and his children by refusing to hire them. *See, e.g.*, Pl.'s Mem. at 7.

In a previous opinion in this case, I explained that such claims are not part of the present action. *Sabbia v. Commissioner of Social Sec. Admin.*, 669 F. Supp. 2d 914, 922 (N.D. Ill. 2009). These claims were not raised in Sabbia's complaint; they have been asserted almost entirely without argument or evidence; and Sabbia has made no attempt to address the jurisdictional barrier to these claims posed by, *inter alia*, the SSA's exclusive remedies provision. *See, e.g.*, *Tallman v. Reagan*, 846 F.2d 494, 495 (8th Cir. 1988) (pro se plaintiff's FTCA claim based on alleged negligence in processing his SSA application was precluded by the Social Security Act's exclusive remedies provision); *Hooker v. U.S. Dept. of Health and Human Services*, 858 F.2d 525, 529 (9th Cir. 1988); *Hronek v. Secretary, Dept. of Health*, No. Civ.A.CCB-03-330, 2003 WL 24026306 (D. Md. July 7, 2003), *aff'd*, 78 Fed. App'x. 232 (4th Cir. 2003). I therefore find it necessary to repeat once again that Sabbia should discontinue his practice of raising extraneous claims and of filing extraneous documents. Doing so has served only to delay adjudication of the claim he has properly asserted.

4

("Corr"), an SSA claims representative involved in processing Sabbia's 2001 application, should be dismissed as a defendant in the case.

As explained below, the denial of Sabbia's 2001 application is not properly before me and I accordingly decline to review it. With respect to Sabbia's 2005 application, I grant the Commissioner's motion for summary judgment and deny Sabbia's motion. I also deny Sabbia's ancillary motions to bar the Commissioner's motion for summary judgment, his motion for contempt, and his motion for excess damages.

## II.

"Judicial review of the Commissioner's decision is authorized by 42 U.S.C. §§ 405(g) and 1383(c)(3)." *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Since the Appeals Council denied Sabbia's request for review, the ALJ's opinion represents the final decision of the Commissioner. *See, e.g.*, *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). Under § 405(g), my review is limited to determining "whether the final decision of the Secretary is both supported by substantial evidence and based on the proper legal criteria." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

## III.

### A. Sabbia's 2001 Application

Before turning to the ALJ's decision concerning Sabbia's 2005 application, it is first necessary to address Sabbia's request that

I review the SSA's denial of his 2001 application for benefits. As noted above, although the SSA originally contended that this decision was not subject to review because Sabbia had failed to seek reconsideration of it, the SSA has recently changed its position.

By way of explanation, the Commissioner states in his summary judgment briefs that after the initial denial of Sabbia's 2001 application, Sabbia wrote to the SSA's Chicago Loop field office to request a copy of the form that he needed to submit in order to request reconsideration of the decision. The SSA contends that Sabbia was sent the proper form but that it has no record of Sabbia ever having returned it. However, in writing to request the reconsideration form, Sabbia asked that his letter itself be considered a request for reconsideration. R. at 231. According to the Commissioner, "[u]nder the procedures that SSA had in place at the time, that statement in and of itself was sufficient to constitute a timely request for reconsideration." Commissioner's Mem. at 9. As a result, the Commissioner concedes that the "SSA should have considered the request to be timely but incomplete." *Id.* Instead, the SSA's "electronic records incorrectly reflected that Mr. Sabbia had not requested reconsideration of the denial of his original application for benefits." *Id.* (citation omitted).

Sabbia appears at times to believe that by conceding this mistake, the SSA has somehow confessed to having erred in initially

denying his 2001 application. As a result, he claims in various places that the SSA has admitted to violating his (and his children's) rights. *See, e.g.*, Reply at 8. That is incorrect. The SSA has stated that it was mistaken only about whether Sabbia had sought reconsideration of the denial, not that it was mistaken about the denial itself. Indeed, according to documents that Sabbia himself has submitted to the court, the SSA has since reviewed Sabbia's 2001 application and has informed him that it found no reason to disturb its original determination. *See* Doc. 130. Sabbia states that he has sought review of the decision by an ALJ. So far as the court is aware, the decision has yet to be reviewed.[4]

The upshot of this is that I am without jurisdiction to review the denial of Sabbia's 2001 application for benefits. Social Security regulations clearly set forth the steps that a claimant must take before obtaining judicial review of an administrative decision denying his application for benefits. An individual claiming entitlement to benefits first receives an initial determination. *See* 20 C.F.R. §§ 404.902, 416.1402. If the decision is not favorable to the claimant, he may seek reconsideration. *See* 20 C.F.R. §§ 404.907, 416.1407. If the reconsideration is unfavorable, the claimant may request a hearing before an ALJ. *See*

---

[4] According to other documents filed with the court, the SSA appears to have no record of Sabbia's having filed for review of his claim by an ALJ. *See* Doc. 131.

20 C.F.R. §§ 404.929, 416.1429. If the claimant disputes the ALJ's determination, he may request that the decision be reviewed by the Appeals Council. *See* 20 C.F.R. §§ 404.967, 416.1467. Only after negotiating each of these procedural hurdles may a claimant obtain review of the Commissioner's final decision by a federal district court. *See* 20 C.F.R. §§ 404.981, 416.1481. Since Sabbia's 2001 claim is presently wending its way through the administrative appeals process, it cannot be reviewed here.

Nevertheless, Sabbia advances a number of arguments in an effort to show that I may (or must) review the denial of his 2001 application. In several filings, he invokes the doctrine of res judicata. The logic of his argument is difficult to decipher, but he appears to claim that the Commissioner's final decision on his 2005 application somehow amounted to a determination that he was disabled as of 1999. *See, e.g.*, Pl.'s Resp. at 1. As a result, Sabbia appears to claim that the issue is res judicata, and that he is entitled to judgment in his favor with respect to his 2001 application.

This view is mistaken. As evidence for his position, Sabbia cites the April 9, 2009 letter from the Appeals Council, which explained its reasons for refusing to disturb the ALJ's ruling on his 2005 application. Sabbia makes much of the fact that the SSA's letter cites evidence of his income dating back to 1999. But the Appeals Council's reference to his earnings during previous years

in no way constitutes a determination that he was disabled during those years. As a result, the doctrine of res judicata does not apply here.

Sabbia makes roughly the same argument based on the ALJ's decision concerning his 2005 application. *See, e.g.*, Doc. #123 at 3; Doc. #120 at 2. Again, his reasoning is not entirely clear, but he appears to maintain that the ALJ somehow rendered a determination that he was disabled in 1999, and that, as a result, the claim cannot be relitigated for purposes of his 2001 application. In other filings, Sabbia also appears to claim that the ALJ somehow decided that he was disabled for the years 2003, 2004, and 2005, and that the SSA is flouting the ALJ's decision by continuing to contest his entitlement to benefits for this period. *See* Doc. 120.

As with Sabbia's reading of the Appeals Council's letter, his reading of the ALJ's decision is implausible. The fact that the ALJ acknowledged some evidence of disability going back to 1999 does not constitute a finding that Sabbia was "disabled" within the meaning of the Social Security Act at that time. On the contrary, the ALJ specifically identified February 15, 2005 as the onset date for his disability.

The case on which Sabbia relies, *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837 (6th Cir. 1997), illustrates why his position is incorrect. In *Drummond*, the plaintiff filed an initial

application for DIB on July 6, 1987, alleging a disability onset date of November 17, 1985. The ALJ found that Drummond was no longer able to perform the work she had done in the past, but that she retained a residual functional capacity ("RFC") for sedentary work. On June 21, 1989, Drummond filed another DIB application covering the later period from July 28, 1988 to August 2, 1990. The application was denied and eventually heard by a second ALJ who concluded that Drummond had an RFC for "medium" level work, and that, instead of being limited to sedentary work, she was capable of performing her previous job as an operator of a textile machine. On appeal, the Sixth Circuit held that res judicata precluded the second ALJ's higher estimation of Drummond's RFC (at least in the absence of evidence that her condition had improved with the passage of time). Here, unlike in *Drummond*, no determination has been made regarding whether Sabbia was disabled prior to 2005.

Finally, Sabbia cites my November 2009 opinion in this case, *Sabbia v. Commissioner of Social Sec. Admin.*, 669 F. Supp. 2d 914 (N.D. Ill. 2009), as a basis for his contention that I should review his 2001 application in this action. Specifically, he points to the opinion's statements that "this case is limited to the claims listed in Sabbia's complaint," and that "[t]he complaint brought only one claim, namely, his request for review of the SSA's denial of his application for benefits." *Id.* at 922. Sabbia goes on to note that the complaint he filed in this case makes reference

to his 2001 application.  He therefore appears to believe that the present action encompasses his 2001 application.

Sabbia is mistaken.  His complaint, which consists of a single page, states: "Plaintiffs complains [sic] of a decision against them bearing the following Caption: In the Case of Dominic Sabbia Sr. Claim for Disability and SSI dated 12/19/2001."  Compl. at 1. The complaint goes on to say: "The date of the THREE (enclosed) final decisions by the Secretary against the plaintiffs is April 9th 2009, April 23, 2009, and May 1st, 2009."  *Id.*  Plainly, none of these final decisions is related to his 2001 application, for a final decision has yet to be issued regarding that application. Rather, the decisions to which Sabbia refers are those denying his 2005 application for benefits and the decisions denying the applications that Sabbia purported to bring on behalf of his children.  To the extent that Sabbia wishes to portray the 2001 application as somehow consolidated with, or subsumed under, the 2005 application, he is again incorrect.  The 2001 application is obviously proceeding separately from this one.  The fact that Sabbia mentions his 2001 claim in the complaint does not give me jurisdiction over that application, any more than his references to his children's applications give me jurisdiction over those applications.

I therefore reiterate that the instant action concerns only Sabbia's 2005 application for benefits, not his 2001 application,

not his children's applications for benefits, and not any of the other causes of action that he purports to assert in his many filings.

## B.   The 2005 Application

To qualify for benefits under the Social Security Act, an individual must be deemed "disabled" within the meaning of the Act. *See, e.g.*, *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009) (citing 42 U.S.C. § 423(a)(1)(E)). The SSA defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Social Security regulations set forth a sequential, five-step inquiry that must be conducted to determine whether a claimant satisfies this definition. *Liskowitz*, 559 F.3d at 739 (citing 20 C.F.R. §§ 404.1520, 416.920). Specifically, the ALJ must determine: "(1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the Commissioner; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing work in the national economy." *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009) (citations and brackets omitted).

Here, the ALJ concluded that Sabbia was disabled and entitled to benefits as of February 15, 2005. However, for the period between March 2003 and February 2005, she concluded, based on Sabbia's earnings, that he was "gainfully employed" and therefore ineligible for benefits. The ALJ explained her decision in this way:

> In his application for disability benefits the claimant initially alleged an onset date of disability of March 3, 2003. However, the claimant's earnings record shows $12,027 for 2003, $21,573 for 2004 and $11,049 for 2005. The Social Security Administration asked the claimant to explain this income. The claimant, who has shown a propensity to submit voluminous documentation in support of his disability claim, was conspicuously brief as well as vague in his reply. In fact, he didn't really attempt to explain these earnings. However, he did complete a new "Disability Report" on June 1, 2005 in which he lists the date that he stopped working as February 15, 2005. In view of this evidence, the Judge finds that the claimant was engaged in substantial gainful activity until February 15, 2005.

R. at 20 (citations omitted).

In appealing the ALJ's decision, Sabbia contends that his earnings for the years in question were the result of nineteen different jobs. As evidence for this claim, he has submitted several pages of W-2 forms from a number of his employers during this period. He claims that he was able to hold these jobs only briefly and that he was fired in each case when his disability made it impossible for him to work. Under Social Security regulations, he maintains, these earnings should not have been taken into account in determining whether he was gainfully employed during the

period in question.  Specifically, he cites 20 C.F.R. § 416.974(c),
which provides:

> Ordinarily, work you have done will not show that you are
> able to do substantial gainful activity if, after working
> for a period of 6 months or less, you were forced by your
> impairment to stop working or to reduce the amount of
> work you do so that your earnings from such work fall
> below the substantial gainful activity earnings level in
> paragraph (b)(2) of this section and you meet the
> conditions described in paragraphs (c)(2), (3), (4), and
> (5) of this section.

20 C.F.R. § 416.974(c)(1); *see also* 20 C.F.R. § 416.974(c)(3) ("If
you worked 3 months or less. We will consider work of 3 months or
less to be an unsuccessful work attempt if you stopped working, or
you reduced your work and earnings below the substantial gainful
activity earnings level, because of your impairment or because of
the removal of special conditions which took into account your
impairment and permitted you to work.").

In addition, Sabbia claims that the ALJ improperly included
other earnings (e.g., subsidies, workers' compensation claims,
holiday pay, and work performed during periods when his
disabilities were in remission) in calculating his earnings during
the period in question.  *See, e.g.*, 20 CFR 416.974(c)(4)(iii)("We
will consider work that lasted longer than 3 months to be an
unsuccessful work attempt if it ended, or was reduced below the
substantial gainful activity earnings level, within 6 months
because of your impairment or because of the removal of special
conditions which took into account your impairment and permitted

you to work and . . . [y]ou worked during a period of temporary remission of your impairment.").

The problem is that, for reasons he never explains, Sabbia did not present this evidence below, either to the ALJ or to the Appeals Council. As a result, the evidence cannot be considered in reviewing the ALJ's decision. *See, e.g.*, *Rice v. Barnhart*, 384 F.3d 363, 366 (7th Cir. 2004) (holding that it was not appropriate for district court to consider evidence submitted to Appeals Council but not presented to the ALJ); *Uppole v. Chater*, 76 F.3d 381 (7th Cir. 1996) ("The district court's function is to determine whether the record as a whole contains substantial evidence to support the ALJ's decision. It may not consider evidence outside of the certified record.").

In cases where new evidence has been discovered, § 405(g) allows a district court to remand a case so that the evidence can be considered by the ALJ in the first instance. The statute provides that a district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). This provision is inapplicable here because Sabbia's evidence is not new. "New evidence" is "evidence not in existence or available to the claimant at the time of the

administrative proceeding." *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003) (quotation marks omitted). Sabbia's tax information fails to meet this criterion, because it was in existence at the time of his hearing before the ALJ. Nor has Sabbia shown good cause for failing to produce the records until now. As already noted, he has not given any explanation, much less a good one, for not raising this argument or presenting this evidence while his case was in front of the ALJ.

Sabbia's only remaining contention is that the case should be remanded because the ALJ failed to make sufficient efforts to develop the record. It is true that "the ALJ in a Social Security hearing has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). It is also true that when a claimant appears without counsel, the ALJ's duty is enhanced, and she "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* (quotation marks and brackets omitted); *see also Thompson v. Sullivan*, 933 F.2d 581, 586 (7th Cir. 1991) ("[W]hen a claimant is both unrepresented *and* suffers from a mental impairment . . . the ALJ's duty to carefully develop the record is even greater.") (quotation marks and brackets omitted).

In this case, it is difficult to imagine what more the ALJ might have done to develop the record. It is also difficult to imagine how Sabbia might have been less cooperative. As the

Commissioner observes, the "SSA had not only expressly queried Mr. Sabbia about his earnings, but also told him what type of information SSA would find useful." Commissioner's Mem. at 4. The SSA provided Sabbia with forms that asked him to give the dates of his employment, his earnings, and other details about his jobs. In some cases, the forms appear to have been given to Sabbia with certain of his employers already listed on them. In fact, some of the forms contained a section for each employer that allowed an applicant, simply by checking a box, to indicate that his employment with a given employer lasted fewer than six months. *See* R. at 1068-77.

Sabbia did not provide any information in answer to these questions. Nor did he check any of the boxes. Instead, he responded by writing in each space provided: "See your records because I don't have any records." *See, e.g.*, R. at 1053. In addition, Sabbia did not attend a consultative examination scheduled by the ALJ; he failed to sign medical release and other forms that the SSA asked him to complete; and he refused to appear in person at a hearing before the ALJ.

Sabbia did not merely fail to cooperate by passively failing to provide information or attend appointments. He made matters more difficult by filing numerous documents containing information that was not relevant to his case. Sabbia has filed multiple applications for SSA benefits, both on his own behalf and on behalf

of his children.  He has also applied for benefits with other federal agencies.  If his past conduct shows anything, it is that when he wishes to bring information to someone's attention, he knows how to do so.  Indeed, in this case, and in others, Sabbia has filed documents even after being instructed not to do so. Hence, when Sabbia stated that he had no records documenting his work during the years in question -- even after being asked for the information specifically and repeatedly -- it was reasonable for the ALJ to conclude that Sabbia had no information to produce.

Sabbia also created confusion by filing a "Disability Report" in lieu of submitting the financial documentation that the SSA requested from him.  On the report, Sabbia listed February 15, 2005 as the date on which he stopped working.  R. at 20.  Under these circumstances, the ALJ reasonably regarded February 15, 2005 "as an amended onset date of disability by the claimant to conform to his documented earnings."  R. at 20.

Although the ALJ's duty to develop the record "is enhanced when a claimant appears without counsel," *Nelms*, 553 F.3d at 1098, the Seventh Circuit has affirmed that the claimant still bears the burden of proving disability, and that "[e]ven a pro se litigant bears some responsibility for making a record."  *Johnson v. Barnhart*, 449 F.3d 804, 808 (7th Cir. 2006).  Here, Sabbia not only did nothing to help develop the record, he made it virtually impossible for the ALJ to do so.  Under these circumstances, the

ALJ's efforts to develop the record were more than adequate. Since the record provides substantial support for her conclusion that Sabbia was gainfully employed during the period from March 3, 2003 to February 15, 2005, I grant the Commissioner's motion for summary judgment.

### C. Additional Issues

In light of the foregoing discussion, the denial of Sabbia's motion for summary judgment follows *a fortiori.* It also follows that the ancillary motions Sabbia filed in connection with his summary judgment motion must be denied. For completeness, I briefly address these before concluding.

First, in addition to his motion for summary judgment, Sabbia filed a motion to bar the SSA's motion for summary judgment on the ground that the motion was not submitted with a statement attesting to the parties' attempts to reach a settlement in the case. *See* Doc. #118. He also cites this alleged shortcoming as part of a motion for excess damages against the SSA. *See* Doc. #123 at 2. According to Sabbia, the failure to submit the statement violates language in this Court's Initial Status Conference Form, which states: "The court will not consider a summary judgment motion until the parties have first discussed settlement. Any motion for summary judgment must be accompanied by a statement signed by lead counsel for both parties certifying that they have engaged in good faith settlement efforts."

This argument is without merit.  As described in my November 2009 opinion, Sabbia presented the SSA with several multi-million dollar settlement demands.  The Commissioner has rejected these and informed Sabbia that it does not wish to settle the case.  *See Sabbia*, 669 F. Supp. 2d at 918.  The issue of settlement has been fully explored.  Under these circumstances, the Commissioner's failure to submit the statement is of no consequence.

Sabbia has also filed a document styled as a "motion to enforce constitutional rights." *See* Doc. 124.  The motion consists of the following language: "I cite: The Constitution of the United States of Americia. Relief sought: If there is justice, Grant me my rights guarenteed [sic] by The Constitution of the United States of Americia [sic]." *Id.*  Inasmuch as the motion provides no further argument or explanation of the relief it seeks, it is denied.

Finally, Sabbia has filed a number of other motions, including a motion for excess damages against the SSA and a motion to hold the SSA in contempt.  In support of these motions, he again cites the Commissioner's failure to submit a statement regarding settlement.  He also cites the SSA's "confession of error," which, as noted above, Sabbia apparently mistakes as an admission by the SSA that it wrongly denied his 2001 claim for benefits.  The motions also contain numerous other complaints in connection with the SSA's denial of his (and his children's) 2001 claim for benefits.  These motions are denied because they are either based

on erroneous grounds or pertain to his 2001 application (or for both reasons).

## Conclusion

For the reasons stated above, I grant the Commissioner's motion for summary judgment. I deny Sabbia's motion for summary judgment and the various other motions he has filed along with it. I decline to address any of Sabbia's claims concerning his 2001 application for benefits, or to consider any of the other claims and issues Sabbia has sought to raise beyond his request for judicial review under § 405(g).

ENTER ORDER:

Elaine E. Bucklo
United States District Judge

Dated: August 25, 2010